## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE E. HAUMAN, | ) | Case No. 4:19-cv-1806 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF YOUNGSTOWN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff George Hauman filed suit against the City of Youngstown and various City entities and officials for violation of his Fourth and Fourteenth Amendment rights. According to the complaint, City officials conducted illegal searches and seizures of his real property and failed to provide him due process for alleged violations of the City's ordinances relating to property maintenance. Defendants move for summary judgment. For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment.

## STATEMENT OF FACTS

This action arises out of several code violations involving Mr. Hauman's property, located at 153 Hilton Avenue, Youngstown, Ohio. As a result of these code violations, City officials "red tagged" Mr. Hauman's house, meaning the City issued and posted on the house an order to vacate the premises. Because Defendants maintain they are entitled to judgment as a matter of law, they do not dispute the

facts alleged in the complaint or present other evidence.  Therefore, the Court takes the allegations of the complaint as true for purposes of this motion.

## A.  Youngstown Property Maintenance Code

The Youngstown Property Maintenance Code applies to every structure and premises within the City and constitutes the "minimum requirements and standards for the health, safety and welfare of the public."  Youngstown, Ohio, Codified Ordinance § 546.01(b) (2016).  The intent of the code is "to ensure public health, safety and welfare, improve aesthetics, and prevent the deterioration of properties and premises within the City."  *Id.* § 546.01(c).

As relevant here, the code provides that every plumbing fixture "shall be properly connected to either a public water system or to an approved private water system."  *Id.* § 546.04(66).  Further, it provides that "every occupied building shall be provided with an electrical system in compliance" with certain requirements.  *Id.* § 546.04(84).  Those requirements relate to proper fusing, sufficient receptacle and lighting outlets, proper wiring and installation, and adequate service of the electrical system.  *Id.* § 546.04(86).

To enforce these provisions, City officials "charged with enforcing this code are authorized to enter upon any premises, at reasonable times, for purposes of conducting an exterior inspection."  *Id.* § 546.03.  Officials may also inspect the interior but only with the consent of the property owner.  *Id.*  "If consent is denied, the inspector may not enter unless there are exigent circumstances or an administrative or other warrant is obtained."  *Id.*

### B.    Notice of Ordinance Violations to Mr. Hauman

On August 2, 2017, the City "red tagged" Mr. Hauman's house by posting an order to vacate on the front window.  (ECF No. 1, ¶ 1, PageID #1.)  A code enforcement officer, Laura Fulmer, signed the order, which notified Mr. Hauman that the property was in violation of the code because it was not connected to a water system and lacked electrical facilities, in violation of Section 546.04(66) and Section 546.04(84).  (ECF No. 22-2, PageID #329.)  The order described the remedial action needed to correct the code violations and the appeal procedure.  (*Id.*)  According to the complaint, a notice of violation was taped next to the order to vacate.  (ECF No. 1, ¶ 1, PageID #2.)  That notice does not appear in the record.

On September 11, 2017, the City issued a second notice of violation, which Ms. Fulmer also signed; it too notified Mr. Hauman that his property was not in compliance with the code. (ECF No. 22-1, PageID #320.)  The notice lists Mr. Hauman as the owner according to both county and city records.  (*Id.*)  It assessed an administrative penalty of one hundred dollars and described Mr. Hauman's appeal rights.  (*Id.*)

### C.    Mr. Hauman's Appeal

On August 9, 2017, Mr. Hauman requested a hearing with the Property Maintenance Appeals Board relating to both the order to vacate and the first notice of violation.  (ECF No. 22-2, PageID #330.)  On September 20, 2017, Mr. Hauman received notice that the appeals board scheduled his appeal for a hearing nearly a later, on August 9, 2018.  (ECF No. 1, ¶ 4, PageID #2.)

3

On that date, Mr. Hauman attended the appeal hearing.  (*Id.*, ¶ 6, PageID #3.)
At the hearing, according to the complaint, the appeals board informed Mr. Hauman
that it was not hearing the appeal of the red-tag order but rather concerned only the
alleged violations listed on the notice of violation.  (*Id.*)  According to the complaint,
on August 16, 2018, Mr. Hauman received notice that the appeals board denied his
appeal, though the denial was postmarked on August 13, 2018.  (*Id.*, ¶ 11, PageID
#5.)  The denial of Mr. Hauman's appeal does not appear in the record.

### D.    Events Surrounding the Appeal Hearing

The day before the hearing, August 8, 2018, Plaintiff alleges that City inspector
Neil McCallum entered his property and refused to leave.  (*Id.*, ¶ 5, PageID #3.)
According to the complaint, Mr. McCallum stated he was "like a police officer and can
go anywhere I want to without a warrant" and "I have the Law Department on my
side." (*Id.*)

On August 14, 2017, after the appeals board denied Mr. Hauman's appeal but
before Mr. Hauman received notice of that denial, Mr. Hauman alleges an encounter
between himself and City officials.  According to the complaint, Code Enforcement
Superintendent Michael Durkin, accompanied by several police officers, appeared at
Mr. Hauman's house.  (*Id.*, ¶ 7, PageID #3.)  One of the officers informed Mr. Hauman
that Mr. Durkin and the officers were there to red tag the house because it was not
connected to a water system and lacked electrical facilities.  (*Id.*)  After some
discussion, Mr. Durkin and the officers agreed that if Mr. Hauman could demonstrate
the property had working utilities, then they would not tag the house.  (*Id.*)

4

Mr. Hauman so demonstrated, and the officer filmed his demonstration of the utilities. (*Id.*, PageID #4.)

However, Mr. Durkin subsequently informed Mr. Hauman that he had to connect to the public water system and, if he did not, he would be arrested for trespassing. (*Id.*)  At that point, a policer officer placed Mr. Hauman in handcuffs and told him he was being arrested for "criminal trespassing." (*Id.*; *id.*, ¶ 15, PageID #7.)  After Mr. Hauman's girlfriend, Mary Matterson, informed Mr. Durkin and the officers that she would connect the property to the public water system, the officers released Mr. Hauman and departed.  (*Id.*, ¶ 7, PageID #4.)  Mr. Durkin informed Matterson that she had until the next day to take the remedial action; otherwise, Mr. Hauman would again be arrested for criminal trespassing.  (*Id.*)  Sometime following this encounter with Mr. Durkin, Matterson initiated water service for the property in her name.  (*Id.*, ¶ 13, PageID #6.)

### E.    Subsequent Developments

According to the complaint, Mr. Hauman sold the property in September 2018. (*Id.*, ¶¶ 1 & 12, PageID #1 & #5.)  Nonetheless, the City continues to bill Mr. Hauman for water, sewer, and garbage despite knowing that Mr. Hauman no longer owns the property.  (ECF No. 1, ¶ 13, PageID #6.)

Further, according to the complaint, the City issued another notice of violation on March 28, 2019, which a property inspector named Vera Grier signed.  (ECF No. 1, ¶ 12, PageID #5.)  That notice does not appear in the record.  Ms. Grier signed another notice of violation dated May 8, 2019, which does appear in the record.  (ECF No. 22-1, PageID #321.)  That notice lists Mr. Hauman as the owner according to City records

and Matterson as the owner according to county records. (*Id.*) The notice assessed an administrative penalty of one hundred dollars and described how to appeal. (*Id.*)

## STATEMENT OF THE CASE

A few months later, on August 8, 2019, Plaintiff filed his complaint *pro se*. (ECF No. 1.) As Defendants, Plaintiff names the City of Youngstown and various City entities, including the Property Code Enforcement and Demolition Department, the Property Maintenance Appeals Board, and the police department. (*Id.*, PageID #1.) Further, Plaintiff names various City officials as Defendants, including City Inspector Neil McCallum, Code Enforcement Superintendent Michael Durkin, Code Enforcement Officer Laura Fulmer, Property Inspector Vera Grier, and Mark Williams, a member of the appeals board. (*Id.*) Plaintiff also names as Defendants City Law Director Jeff Limbian and First Assistant Law Director James Vivo. (*Id.*) Plaintiff brings his claims against all named persons in their individual and official capacities. (*Id.*, PageID #7.) Finally, Plaintiff includes in his complaint thirty John Doe Defendants.

Against Defendants, Plaintiff brings constitutional claims under Section 1983. Plaintiff alleges that Defendants deprived him of due process in violation of the Fourteenth Amendment. (*Id.*, ¶ 14, PageID #6.) Further, Plaintiff alleges Defendants subjected his person and property to illegal search and seizure in violation of the Fourth and Fourteenth Amendments. (*Id.*) In addition, Plaintiff asserts a State-law claim for trespass against Mr. McCallum. (*Id.*, ¶ 5, PageID #3.)

6

Defendants move for summary judgment on all Plaintiff's claims.  (ECF No. 21.)
Plaintiff opposes.  (ECF No. 22.)

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party.  *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008).  After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial."  *Tokmenko v. MetroHealth Sys.*, 488 F.Supp.3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* (citing

*Celotex Corp.*, 477 U.S. at 323).  Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.*  However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.*  The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).  To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).  Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## I.    Proper Defendants

Section 1983 provides a federal remedy for State violations of rights secured under the Constitution or federal law. *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d

1156, 1160 (6th Cir. 2021).  As an initial matter, the Court considers whether the entities and individuals Plaintiff names are proper Defendants under Section 1983.

### I.A.  City of Youngstown Sub-Units

First, in addition to the City of Youngstown, Plaintiff names as Defendants the Property Code Enforcement and Demolition Department, the Property Maintenance Appeals Board, and the police department.  As Defendants point out, these entities are sub-units of the City of Youngstown.  *Sargent v. City of Toledo Police Dep't*, 150 F. App'x 470, 475 (6th Cir. 2005) (holding that police departments are "merely sub-units of the municipalities they serve" and, therefore, are not proper defendants in a Section 1983 action).  Accordingly, Plaintiff's Section 1983 claims against these entities fail as a matter of law and summary judgment is warranted.

### I.B.  Mark Williams, James Vivo, and Jeff Limbian

In his complaint, Plaintiff names Mr. Williams, Mr. Vivo, and Mr. Limbian as Defendants both in the caption and in a table that follows the signature block.  (ECF No. 1, PageID #1 & 9–10.)  However, Plaintiff does not make any factual allegations against these individuals.  "[C]laims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008).  The Court determines that Plaintiff has not established any claim against Mr. Williams, Mr. Vivo, or Mr. Limbian.  Accordingly, these Defendants are entitled to summary judgment.

## II.    Section 1983 Claims

Section 1983 contains no substantive rights, rather, it provides a statutory vehicle for vindicating rights found in the Constitution or another federal law. *Dibrell*, 984 F.3d at 1160.  Under Section 1983, the "threshold inquiry" is to determine the specific constitutional right at issue.  *Id.*  (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017)).  Plaintiff alleges that Defendants violated his constitutional rights but does not cite any specific right.

Once Defendants moved for summary judgment, Plaintiff was required "to come forward with every legal theory" on which his complaint relied.  *National Credit Union Admin. v. Michigan Nat'l Bank of Detroit*, 771 F.2d 154, 161 (6th Cir. 1985).  In the Court's view, based on its reading of Plaintiff's opposition, Plaintiff alleges two claims—one for due process under the Fourteenth Amendment and the other for unlawful search and seizure under the Fourth and Fourteenth Amendments.  (*See* ECF No. 22.)  In the Court's view, Plaintiff has forfeited any other constitutional claims.

### II.A.   Due Process

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The due process clause has both substantive and procedural components.  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  Plaintiff alleges that Defendants violated his due process rights by enforcing the City's Property Maintenance Code and issuing administrative penalties pursuant to them.  (ECF No. 1, ¶ 10, PageID #5.)

### II.A.1. Substantive Due Process

Substantive due process bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The type of governmental actions due process proscribes depends on the nature of the right being deprived. *Shoemaker v. City of Howell*, 795 F.3d 553, 564 (6th Cir. 2015). Where governmental actions deprive individuals of fundamental rights, courts apply strict scrutiny to the alleged deprivation. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 301–02 (1993)). Here, Plaintiff has not identified a fundamental right implicated by the ordinances' property maintenance requirements, and the Court concludes that one is not at issue here. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (recognizing a narrow list of rights as fundamental).

Where government actions do not affect fundamental rights, they will be upheld if they are rationally related to a legitimate state interest. *Sheffield v. City of Fort Thomas*, 620 F.3d 596, 613 (6th Cir. 2010). "This standard is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (cleaned up). The plaintiff bears the burden to show that "there is no rational

11

connection between the enactment and a legitimate government interest." *Sheffield*, 620 F.3d at 613 (cleaned up).

Defendants contend that the minimum maintenance standards related to water systems and electricity protect the social and economic welfare of the community. (ECF No. 21-1, PageID #246.)  Public health, safety, and welfare are legitimate governmental interests. *See Harris v. Akron Dept. of Public Health,* 10 Fed.Appx. 316, 319 (6th Cir. 2001) (identifying health, safety, and welfare of the public as legitimate governmental interests).  Plaintiff does not dispute that his property did not comply with the Property Maintenance Code; instead, Plaintiff argues that his property had adequate utilities furnished through solar panels and a "rainwater collection system." (ECF No. 1, ¶ 7, PageID #3; ECF No. 22, PageID #318; ECF No. 22-2, PageID #330.)  But whether Plaintiff believes that the ordinances are "unnecessary or ineffectual simply is not relevant to rational basis review." *Bojicic v. DeWine*, __ F. Supp. 3d __, No. 3:21-CV-00630-JGC, 2021 WL 4977018, at *11 (N.D. Ohio Oct. 27, 2021).

Because no fundamental right is implicated by the City's property maintenance requirements and because those requirements are rationally related to legitimate governmental purposes, enforcement of the ordinances did not violate Plaintiff's substantive due process rights.

### II.A.2. Procedural Due Process

For a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived

without appropriate process.  *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762–63 (6th Cir. 2005) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)). Then, the inquiry becomes "whether the deprivation of that interest contravened notions of due process."  *Id.* (quoting *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)).  Defendants do not dispute that Plaintiff had a constitutionally protected property interest but maintain that no deprivation occurred because Plaintiff did not allege that he ever paid the administrative penalties levied against him nor that he was evicted from his property.  (ECF No. 21-1, PageID #246.)

If a deprivation occurred, the Court determines that Plaintiff received due process.  At bottom, due process requires that a person be "given notice of the case against him" and "opportunity to meet it."  *Shoemaker*, 795 F.3d at 559 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976)).  Here, the City provided Plaintiff with ample notice of the allegations against him, including at least the three notices of violation that are in the record.  (ECF No. 22-1, PageID #320–21; ECF No. 22-2, PageID #329.)  Each of the notices explained Plaintiff's appeal rights and the appeal process.  (*Id.*)  Indeed, Plaintiff exercised his appeal rights and received a hearing in front of the Property Maintenance Appeals Board.  (ECF No.1, ¶ 6, PageID #3; ECF No. 22-2, PageID #330.)

Plaintiff argues that he did not receive an appeal because the appeals board did not hear his appeal of the red-tag order specifically.  (ECF No. 22, PageID #316–18.)  However, Plaintiff does not contest that the appeals board heard his appeal as it related to the underlying alleged code violations.  (*Id.*)  The Court

determines that Plaintiff had a sufficient opportunity to be heard and to meet the case against him. Accordingly, the Court is satisfied that Plaintiff received procedural due process.

### II.B. Search and Seizure Claims

The Fourth Amendment, made applicable to the States through the Fourteenth, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *Ker v. California*, 374 U.S. 23, 30 (1963). Plaintiff alleges that Defendants subjected him to "illegal search and seizure of his property and his person." (ECF No. 1, ¶ 14, PageID #6.)

### II.B.1. Unlawful Search Claims

Generally, a search of private property without consent is *per se* unreasonable unless a valid warrant authorizes the search or an established exception to the requirement for a warrant applies. *Camara v. Municipal Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528–29 (1967). Plaintiff challenges two searches of his property. On August 8, 2018, City inspector Neil McCallum entered onto and inspected Plaintiff's property without a warrant. (ECF No. 1, ¶ 5, PageID #3.) On August 14, 2017, Code Enforcement Superintendent Michael Durkin and City police officers came to Plaintiff's property, and at least one police officer entered and inspected Plaintiff's property. (*Id.*, ¶ 7, PageID #3–4.)

As to Mr. McCallum's search, Plaintiff does not allege that Mr. McCallum entered his house. Rather, Plaintiff alleges only that Mr. McCallum trespassed on his property and refused to leave. (*Id.*, ¶ 5, PageID #3.) The Fourth Amendment

14

recognizes a distinction of constitutional significance between a house's interior and exterior. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 583 (6th Cir. 2005) (finding no Fourth Amendment search where a government agent merely inspected a structure's exterior, even where the inspection occurred on the property of the objecting party). Although Plaintiff alleges that Mr. McCallum trespassed while conducting the inspection, trespass alone does not implicate the Fourth Amendment. *Oliver v. United States*, 466 U.S. 170, 183–84 (1984). Plaintiff does not allege that Mr. McCallum's actions were unduly intrusive or that he employed any methods beyond observations with the naked eye. Accordingly, the Court determines that Mr. McCallum did not conduct a Fourth Amendment search by entering Plaintiff's property and inspecting the house's exterior.

Regarding the incident involving Mr. Durkin and the police officers, at least one police officer entered Plaintiff's house. According to the sequence of events described in the complaint, Mr. Durkin and the police officers first arrived at Plaintiff's front door. (ECF No. 1, ¶ 7, PageID #3.) Then, "after some discussion," Plaintiff came to an agreement with Mr. Durkin and the officers that, if Plaintiff showed them the house had working utilities, they would remove the red tag from the property. (*Id.*) Plaintiff proceeded to show a police officer the working utilities inside the house. (*Id.*) Based on these events, the Court finds that any inspection of the interior of Plaintiff's house was conducted with Plaintiff's consent. "Consent from an individual whose property is to be searched . . . validates a search that would otherwise be considered unreasonable and unconstitutional." *Shamaeizadeh v.*

15

*Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003).  In these circumstances, the Court determines that any search Mr. Durkin conducted of Plaintiff's property did not violate Plaintiff's rights under the Fourth Amendment.

### II.B.2. Unlawful Seizure Claims

Turning to the right against unreasonable seizures of property, a seizure occurs under the Fourth Amendment where "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

### II.B.2.i. Seizure of Mr. Hauman's Property

Plaintiff argues that the City seized his property when it red tagged the property with an order to vacate, signed by Ms. Fulmer, stating that no person was permitted on the premises.  (ECF No. 22, PageID #317; ECF No. 22-2, PageID #329.) Mr. Hauman also points to the multiple notices of violation, which Ms. Fulmer and Ms. Grier signed.  (ECF No. 22, PageID #316.)  Plaintiff argues that these actions prevented him from entering his property because he was subject to arrest for trespassing.  (ECF No. 22, PageID #318.)  Defendants argue that Plaintiff has not shown meaningful interference with his possessory interests because Plaintiff does not allege that he paid any fines or that the City evicted him or prevented him from deeding the property to a third party.  (ECF No. 21-1, PageID #246.)

Regarding the alleged code violations of Plaintiff's property, Plaintiff received multiple notices, he appealed those determinations, and he received a hearing before the appeals board.  Only after the appeals board's denial did Mr. Durkin and the

police officers inform Plaintiff that he would be arrested for trespassing if he did not vacate the property. On these facts, and lacking any contrary authority in support of Plaintiff's position, the Court cannot say that the mere red tagging of Plaintiff's property constitutes a seizure under the Fourth Amendment.

Even if a seizure occurred, "reasonableness is still the ultimate standard" under the Fourth Amendment. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992). Here, the Court concludes that the actions against Plaintiff's property—including the issuance of notices of violation, Mr. Durkin's renewal of the red tag, and the police officers' enforcement of the order to vacate—were reasonable. Accordingly, the Court determines that the actions of Ms. Fulmer, Ms. Grier, and Mr. Durkin did not violate Plaintiff rights under the Fourth Amendment.

### II.B.2.ii. Seizure of Mr. Hauman's Person

As to the seizure of his person, Plaintiff alleges that a police officer placed him in handcuffs during the August 14, 2018 incident, before releasing him. (ECF No. 1, ¶¶ 7 & 15, PageID #4 & #6–7.) However, as Defendants point out, Plaintiff has not identified the officer who handcuffed him or named that officer as a Defendant in this action. (ECF No. 23, PageID #347.) Defendants argue that they are entitled to summary judgment for any claim of alleged unconstitutional seizure of Plaintiff's person. (*Id.*) The Court agrees.

Rule 4(m) of the Federal Rules of Civil Procedure required Plaintiff to effect service of the summons and the complaint on Defendants within 90 days after the filing of the complaint. A failure to effect service may be excused on a showing of

good cause. *See* Fed. R. Civ. P. 4(m). "Unless a named defendant agrees to waive service, the summons continues to be the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999).

In the complaint, Plaintiff named certain John Doe Defendants, one as a placeholder for the police officer who handcuffed him. (ECF No. 1, ¶ 15, PageID #6–7.) Plaintiff filed his complaint on August 8, 2019. (ECF No. 1.) However, Plaintiff has still—over two years later—not identified the John Doe Defendants, and has yet to serve them, contrary to the requirements of Rule 4(m). In these circumstances, dismissal of Plaintiff's claims against the John Doe Defendant is warranted. *See* Fed. R. Civ. P. 4(m); *see also Petty v. County of Franklin, Ohio*, 478 F.3d 341, 346 (6th Cir. 2007).

### II.C.  Claims Against the City of Youngstown

Plaintiff brings claims against the City of Youngstown and against Mr. McCallum, Mr. Durkin, Ms. Fulmer, and Ms. Grier in their official capacities. (ECF No. 1, ¶ 18, PageID #7.) Official-capacity suits represent another way of pleading an action against the entity for which the officer is an agent. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994). Therefore, if the claim against the municipality fails, the official-capacity claims must also fail. *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541 (W.D. Ky. 2020).

Municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation. *Monell*, 436 U.S. at 694–95. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Because no employee of the City of Youngstown violated Plaintiff's federal constitutional rights, Plaintiff cannot prevail on a *Monell* claim, and the City of Youngstown is entitled to judgment as a matter of law. For the same reason, Mr. McCallum, Mr. Durkin, Ms. Fulmer, and Ms. Grier are entitled to summary judgment on Plaintiff's official-capacity claims.

## III. State-Law Claim

Plaintiff's complaint presents one State-law claim for trespass against Mr. McCallum. (ECF No. 1, ¶ 5, PageID #3.) On the day before the hearing at the appeals board, City inspector Neil McCallum entered Plaintiff's property and refused to leave. (*Id.*, ¶ 5, PageID #3.) According to the complaint, Mr. McCallum stated he was "like a police officer and can go anywhere I want to without a warrant" and "I have the Law Department on my side." (*Id.*)

A court may exercise supplemental jurisdiction over related claims that "form part of the same case or controversy" as any claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c)(3), this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where

19

"(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "comity, judicial economy, convenience, and fairness."  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620–21 (6th Cir. 1999).

After reviewing the record in this matter, and in the interests of promoting finality in the resolving the disputes between the parties, the Court will not exercise its discretion to decline supplemental jurisdiction over Plaintiff's State-law claim against Mr. McCallum.  Under Ohio law, trespass occurs where a person, without authority or a privilege, physically invades or unlawfully enters the private premises of another person, resulting in damages.  *See, e.g.*, *Apel v. Katz*, 83 Ohio St. 3d 11, 19, 1998-Ohio-420, 697 N.E.2d 600 (citations omitted).  Because the record, construed in Plaintiff's favor, shows that Mr. McCallum was discharging his official duties, he authority or a privilege to enter Plaintiff's property.  Therefore, no trespass occurred as a matter of Ohio law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment in substantial part and **DISMISSES** Plaintiff's claim against the John Doe Defendant.

20

Specifically, the Court **GRANTS** summary judgment in favor of the City of Youngstown's Property Code Enforcement and Demolition Department, the Property Maintenance Appeals Board, and the Youngstown Police Department.  Each of these named Defendants is part of the City of Youngstown municipal government and not a proper Defendant.

The Court **GRANTS** summary judgment in favor of Mr. Williams, Mr. Vivo, and Mr. Limbian because Plaintiff fails to make any allegations against them.

The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's constitutional claims against the properly named Defendants because the record shows that no violation of Plaintiff's federal constitutional rights occurred.  Therefore, these Defendants are entitled to judgment as a matter of law.

The Court **DISMISSES** Plaintiff's unlawful seizure claim against the John Doe police officer based on Plaintiff's failure to effect service.

Finally, the Court **GRANTS** summary judgment in favor of Defendant McCallum on Plaintiff's State-law trespass claim.

**SO ORDERED.**

Dated:  May 2, 2022

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio